UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 15-CR-20169-JEM

UNITED STATES OF AMERICA,                    )   Pages 1-13
                                             )
                 vs.                         )   Miami, Florida
                                             )
LEONEL ALEJANDRO RAMIREZ,                    )
                                             )   November 15, 2021
                 Defendant.                  )   11:30 A.M.

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:        BRIAN DOBBINS
                           United States Attorney's Office
                           99 NE 4th Street
                           Miami, Florida  33132

For the Defendant:         MARISSEL DESCALZO, ESQ
                           Tache, Bronis, Christianson and
                           Descalzo, P.A.
                           150 Southeast Second Avenue
                           Suite 600
                           Miami, Florida  33131

Reported By:               VERNITA ALLEN-WILLIAMS
Vernita_Allen-Williams     Official Court Reporter
@flsd.uscourts.gov         United States District Court
305.523.5048               400 North Miami Avenue
                           Miami, Florida  33128

STENOGRAPHICALLY RECORDED COMPUTER-AIDED TRANSCRIPT

(Call to order of the Court at 11:37 A.M.)

THE COURTROOM DEPUTY:  Calling Case Number 15-20169-CR-Martinez, United States of America vs. Leonel Alejandro Ramirez.

Counsel, please state your name for the record, starting with the government.

MR. DOBBINS:  Good morning, Your Honor. Brian Dobbins on behalf of the United States.

THE COURT:  Mr. Dobbins.

MS. DESCALZO:  Good morning, Your Honor.  Marissel Descalzo on behalf of Leonel Alejandro Ramirez.

THE COURT:  Ms. Descalzo.  And he is present, correct, using the interpreter?

MS. DESCALZO:  Yes, Your Honor, Mr. Ramirez is present, and he is using the interpreter.

THE COURT:  All right.  Please swear the interpreter.

(The interpreter is sworn.)

THE INTERPRETER:  Yes, I do.

THE COURTROOM DEPUTY:  State your name.

THE INTERPRETER:  Consuelo Burranca.

THE COURT:  Good morning, Ms. Burranca.

THE INTERPRETER:  Good morning.

THE COURT:  All right.  Could I get an appearance from probation.

MS. GOULS:  Good morning, Your Honor.  Syreta Gouls on

behalf of U.S. Probation.

THE COURT:  Good morning.

All right.  We are here on the sentencing of Leonel Alejandro Ramirez.  I have reviewed the factual proffer and the plea agreement, the presentence investigation, note that the defendant has agreed to -- excuse me.  The government has agreed to seek dismissal of Counts 2 and 3, and recommend a 3-level reduction for acceptance of responsibility, which I believe has been applied; note the defendant would like to be placed at FCI in Miami.  I will make such a recommendation; although, it is entirely up to the Bureau of Prisons.  I have reviewed the sentencing memorandum, and I'm ready to proceed at this time.

I'd be happy to hear from both sides.  But, Mr. Dobbins, maybe you could address for me what the difference is between this defendant and -- well, how you would compare him to the other defendants, to try to see if we could get some sort of equality here.  He seems to be closest to Mr. Koslovskiy; is that correct?

MR. DOBBINS:  That's correct.  Mr. Sanchez Koslovskiy and this defendant are in the exact same position; in that they both traveled together in February.

THE COURT:  After the actual kidnapping.

MR. DOBBINS:  No, it was before.

THE COURT:  Before?

MR. DOBBINS:  It was prior.  It was about a month prior. In February they traveled over, and they were there for

approximately, I believe, ten days conducting surveillance, and then they returned back to the United States, unlike the other individuals, after this defendant and Mr. Sanchez Koslovskiy left, then Mr. Andres Rodriguez was brought in to assist, but the actual kidnapping doesn't happen until March 25th.

So this defendant is in the same exact position as Mr. Sanchez Koslovskiy. The plea agreement that this defendant received from the government was the same as the one that Mr. Sanchez Koslovskiy agreed, and we don't have any evidence that he participated in the ransom demands post-kidnapping or that he benefited in any way from the kidnapping.

So we would request, pursuant to the plea agreement, that there be a 6-point variance down similar to what Mr. Sanchez Koslovskiy got, which would bring his offense level down from 31 to a 25, and he would be looking at 57 to 71 months.

Mr. Sanchez Koslovskiy received a sentence at the low end of the guideslines of 57 months. The government would also be recommending a sentence at the low end of that guideline range of 57 months for this defendant.

THE COURT: Maybe you can answer.

Why am I sentencing a case from 2015 in 2021?

MR. DOBBINS: This defendant was hard to locate, Your Honor. He was indicted in -- I believe we didn't file the superseding though until, I think it was maybe 2018 --

THE COURT: Okay.

MR. DOBBINS:  -- or 2019.

THE COURT:  So you couldn't find him?

MR. DOBBINS:  We didn't indict him on the superseding. Obviously, you know, we had the initial arrests which occurred about a year later in March of 2015; we then went to, you know, prosecute those six individuals, I believe, we had at that time. Some of those individuals cooperated.  We needed to corroborate what they had.  And during the course of their pleading guilty, agreeing to cooperate and being sentenced, we then, I think, filed the superseding, I believe, in late 2018, and at that point the arrest warrants were issued.

We arrested Mr. Sanchez Koslovskiy and Mr. Andres Rodriguez fairly quickly.  This defendant we had more trouble finding, locating.

THE COURT:  Okay.

MR. DOBBINS:  We believe that, you know, at the time he was picked up, we believe that he knew that he had a warrant out for him but, you know.

THE COURT:  He didn't come running to volunteer?

MR. DOBBINS:  He did not self-surrender, no, Judge.  But to be fair, we were out looking for him but we could not find him.

THE COURT:  All right.  Thank you.

I would be happy to hear from you, Ms. Descalzo.

MS. DESCALZO:  Yes, Your Honor.  On the last question you asked, I want to add that Mr. Ramirez, part of the reason that

this case happened so late is not only that they so-called couldn't find him, it's because the government did not know about him until much later because he was much later.

THE COURT: Can you tell your client to pull up his mask. It's not a chin guard. Thank you.

MS. DESCALZO: Yes.

THE COURT: Okay. Well, what do you have to say and what is your position on the sentencing?

MS. DESCALZO: So, Your Honor, I think that 57 months is the fair sentence. I also would like for the Court to consider even more of a variance because Mr. Ramirez has been incarcerated during the pandemic. He has been locked up at FDC, which is essentially right now a maximum security prison. He cannot, you know, he has not seen his family. There has been times when he has been on total lockup and not been able to go outside because of the pandemic; and, you know, it's even hard for me to visit him sometimes. And, Your Honor, thank you for granting me a continuance on the sentencing, because I had not even been able to get an appointment to go see him in person to prepare him for sentencing. So while I think 57 months is fair, I think in the times that these people are in prison right now, he deserves just a little bit more because of the conditions that he's been -- that he has been under.

And I will also add that as soon as he was arrested, he immediately agreed to plead guilty and accept responsibility. The

only delay was because I told him that I would not permit him to plead guilty until we reviewed all the discovery in the case, which Mr. Dobbins gave me the opportunity to do so and I explained it to him, and then he agreed to plead guilty.

So while maybe the arrest took a bit, he did accept responsibility right away.

THE COURT:  I remember the case from before.

Who was the one, Mr. Dobbins, that didn't agree with them beating the guy up and left in a huff?  Wasn't it one of the persons?  No, he wasn't there during --

MR. DOBBINS:  It was Andres Rodriguez, Your Honor.

THE COURT:  Okay.

MR. DOBBINS:  He was one of the last people you sentenced, as well as Sanchez Koslovskiy.

THE COURT:  I remember that.

MR. DOBBINS:  Those were the three that were added. Yeah, he -- that, again, didn't happen with this defendant.  He was over there conducting surveillance, but he did not participate in the actual abduction, which happened approximately a month later after he had left, so.

THE COURT:  Right.  Okay.  Well, I would be happy to hear from you, Mr. Ramirez.  You don't have to speak to me, but stay seated and pull the microphone closer so that you can speak into the microphone, if you wish to speak to me.  You don't have to.

My inclination is to give you the 57 months, so you might

be able to talk me out of that if you keep talking for a long time.  But go right ahead, sir; but speak in phrases so that the translator can translate.

DEFENDANT RAMIREZ:  Okay.  Before everything else, I address you, Your Honor.  I would like to say to the U.S. government that I apologize.  I apologize before you, Your Honor, and all those present here in this courtroom.  I know that I am guilty; but I'm a human being, and I have a right to make mistakes.  We all make mistakes, and, oh, in my case I made this mistake.

I truly am not a bad guy.  I was really going through a bad situation, and I am here to be sentenced by you, Your Honor. I do truly tell you that I apologize.  I --

This is really all I have to say; that you impose on me the sentence that you deem fair.  Thank you.

THE COURT:  Thank you, sir.  Anything further, Ms. Descalzo?

MS. DESCALZO:  Nothing further, Your Honor, only I will add that I did request the RDAP in the PSI as you required, and that you recommend that as well.

THE COURT:  I'm sorry.  Say that again, please.

MS. DESCALZO:  I requested RDAP, and it's been incorporated in the PSI, and I just ask that you please recommend that to BOP.

THE COURT:  Well, what drug involvement is there in this

case? I haven't heard anything about him having a drug problem.

MS. DESCALZO: It's not a drug problem, Your Honor, it's a drinking issue.

THE COURT: It's a what?

MS. DESCALZO: A drinking issue.

THE COURT: A drinking issue?

MS. DESCALZO: Yes, and it's reported in the PSI.

THE COURT: I would hope that he would not have access to alcohol in prison; but then again, what do I know? I've only been there on visits. Okay. Thank you. I will be glad to have him screened and put in an appropriate facility.

All right. Anything further?

MS. DESCALZO: That's it, Your Honor.

THE COURT: The Court has considered the statements of all the parties, the presentence report which contains the advisory guidelines and the statutory factors as set forth.

The sentence at the low end of the new advisory guideline range would provide just punishment and adequate deterrence to criminal conduct.

It is the finding of the Court that the defendant is not able to pay a fine; however, restitution is mandatory and shall be ordered.

It is the judgment of the Court that the defendant, Leonel Alejandro Ramirez, is committed to the Bureau of Prisons to be imprisoned for 58 months as to Count 1 of the superseding

indictment.

It is further ordered defendant shall pay joint and several restitution with the codefendants in this case in the amount of $84,000.

During the period of incarceration, payment shall be made as follows:  If the defendant earns wages in a federal prisons industries UNICOR job, then the defendant must pay 50 percent of wages earned toward the financial obligations imposed by this judgment in the criminal case.  If the defendant does not work in a UNICOR job, then the defendant must pay a minimum of $25 per quarter towards the financial obligations imposed in this order.

Upon release from incarceration, the defendant shall pay restitution at the rate of 10 percent of monthly gross earnings until such time as the Court may alter that payment schedule in the interests of justice.

The U.S. Bureau of Prisons, the U.S. Probation Office, and U.S. Attorney's Office shall monitor the payment of restitution, and report to the Court any material change in the defendant's ability to pay.

These payments do not preclude the government from using any other anticipated or unexpected financial gains, assets, or income of the defendant to satisfy the restitution obligations.

The restitution shall be made pay able to the Clerk of the United States Courts, forwarded to the U.S. Clerk's Office, attention financial section, 400 North Miami Avenue, Room 8N09,

Miami, Florida 33128.

The restitution will be forwarded by the clerk of the court to the victims on the attached victim list.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of five years as to Count 1 of the superseding indictment.

Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which the defendant is released.

While on supervised release, the defendant shall comply with the mandatory and standard conditions of supervised release, which include not committing any crimes, prohibition from possessing a firearm or other dangerous device, not unlawfully possessing a controlled substance, and cooperation in the collection of of DNA.

The defendant shall also comply with the following special conditions:  surrender to immigration for removal after imprisonment; and unpaid restitution, fines, or special assessments as noted in Part F of the presentence report.

It is further ordered the defendant shall pay immediately to the United States a special assessment of $100 as to Count 1 of the superseding indictment.

I will recommend to the Bureau of Prisons that the defendant be screened for substance abuse problems and referred to participate in an appropriate treatment program by the Bureau of

Prisons.  It may include placement in the Residential Drug Abuse Treatment Program at a designated Bureau of Prisons institution if that is what the Bureau of Prisons determines to be appropriate.

The defendant shall be assigned to a facility as close to the Southern District of Florida as possible, commensurate with his or her background and the offense of which he stands convicted, preference being FCI Miami if that is possible.

The total sentence:  58 months imprisonment, $84,000 in restitution, five years supervised release, $100 special assessment.

I'm sorry.  I said 58 months; I meant 57 months.

So the total sentence:  57 months imprisonment, $84,000 in restitution, five years supervised release, $100 special assessment.

Now that sentence has been imposed, does the defendant or his counsel object to the Court's findings of fact or to the manner in which sentence was pronounced?

MS. DESCALZO:  Your Honor, I do not object; but for the benefit of my client, I just want to reiterate, so the sentence is 57 months?

THE COURT:  57 months, that's correct.

MS. DESCALZO:  Thank you, Your Honor.

THE COURT:  You have the right to appeal the sentence imposed.  Any notice of appeal must be filed within 14 days after the entry of the judgment.  If you are unable to pay the cost of

an appeal, you may apply for leave to appeal in forma pauperis. Good luck to you, Mr. Ramirez.

MR. DOBBINS:  Your Honor, pursuant to the plea agreement, the government would move to dismiss Counts 2 and 3 of the indictment at this time.

THE COURT:  Upon motion of the government, the remaining counts of the superseding indictment are dismissed as to Mr. Ramirez.

Anything further?

MR. DOBBINS:  Nothing, Your Honor.

THE COURT:  We will be in recess on this matter.

MS. DESCALZO:  Thank you, Your Honor.

(Proceedings adjourned at 11:53 A.M.)

C E R T I F I C A T E

I, VERNITA ALLEN-WILLIAMS, do hereby certify that the foregoing is a complete, true, and accurate transcript of the proceedings had in the above-entitled case before the Honorable JOSE E. MARTINEZ, one of the judges of said Court, at Miami, Florida, on November 15, 2021.

/s/ Vernita Allen-Williams
Official Court Reporter
United States District Court
Southern District of Florida